JONES, Justice.
This case requires us to examine issues relating to an alleged breach of contract for sale of the “Birmingham Sport and Boat Show” (Show) by Double C. Productions, Inc. (Double C.), to Exposition Enterprises, Inc. (Exposition). Double C. sued Exposition, seeking injunctive relief and recovery of its security in the form of damages.
This is the second time this case has been before us. In an earlier proceeding, the trial court denied Double C.’s application *53 for a restraining order and its motion for a preliminary injunction. This Court granted Double C.’s petition for mandamus (Double C. Productions, Inc. v. Exposition Enterprises, Inc., 404 So.2d 52 (Ala.1981)) whereupon the trial court granted Double C.’s preliminary injunction. At a subsequent trial, the jury returned a verdict finding Exposition to be the owner of the Show. The trial court granted Double C.’s JNOV motion, and Exposition appeals. We affirm.
Double C., a Texas corporation, successfully did business in Alabama for over ten years as owner and sponsor of the Birmingham Sport and Boat Show. The Show grew to be the largest of its kind in the Southeast.
Exposition entered into a contract with Double C. on August 12, 1980, to purchase for $80,000, payable in installments, the name of the Show, goodwill associated with the name, accounts, contract receivables, and all books, records, documents, and inventory relating to the Show. The contract also provided that, until Double C. was paid in full, Double C. retained a security interest in those items capable of being secured under the Texas Commercial Code.
In addition, the contract, among other provisions, provided that:
1) Exposition was to deposit all contract receivables into a joint Texas bank account;
2) Exposition was to send all contracts with Show exhibitors to Double C., and such contracts were to show Exposition’s address;
3) Exposition was to provide $500,000 in liability insurance coverage for the Show; and
4) Exposition was to make a $500 expense payment to Double C.
The contractual default provisions specified Exposition was “in default” on the “happening of any of the events or conditions following”: 1) Default in the payment or performance of any obligation, covenant, or liability contained or referred to in the contract; 2) Any time the secured party (Double C.) believes that the prospect of payment of any indebtedness secured for the performance of the contract is impaired.
The contract further specified:
“In performing any act under this agreement, and the obligations secured thereby, time shall be of the essence. [Double C.’s] acceptance of partial or delinquent payments or the failure of [Double C.] to exercise any right or remedy shall not be a waiver of any obligation of [Exposition]. ... ”
Exposition did not comply with several contractual provisions. Double C. sent Exposition notice of foreclosure on January 23, 1981, and such notice was received on January 26,1981. Double C. foreclosed on January 30,1981, at the time and place indicated in the letter of foreclosure, and thereafter filed its complaint in this case, seeking an injunction preventing Exposition from operating or advertising under the name “Birmingham Sport and Boat Show,” and, additionally, seeking as damages the items in which Double C. retained a security interest, profits from the 1981 Show, and reasonable attorney’s fees. Double C. moved to strike all claims for money damages prior to trial, and the trial court granted this motion.
Following this Court’s remand of this cause regarding denial of preliminary in-junctive relief, Exposition counterclaimed, contending the contract had not been materially breached, and seeking as damages profits from the 1981 Show. The trial judge denied each side’s directed verdict motions and submitted the case to the jury, which returned a verdict on September 17, 1982, rejecting Double C.’s claim and accepting Exposition’s claim as owner of the Show. The jury rejected, however, all claims for damages for profits sought by Exposition in its counterclaim.
The trial court entered a final judgment based on the verdict, but thereafter granted Double C.’s timely JNOV motion, holding that no evidence supported the jury’s verdict. The issue before us, then, is simply whether sufficient evidence existed to create a jury question as to Exposition’s alleged material breach of contract, because *54 the standards for testing directed verdict and JNOV motions are the same. Ex parte Bennett, 426 So.2d 832 (Ala.1982); Housing Authority of the City of Prichard v. Malloy, 341 So.2d 708 (Ala.1977); White v. Packer, 345 So.2d 312 (Ala.Civ.App.1977).
Exposition, prior to trial, admitted:
1) On January 10, 1981, Exposition did not pay the sum of $20,000 — the first installment — as required by the contract (Exposition had paid $15,000 of that installment, however);
2) On December 22, 1980, Exposition deposited a contract receivable for the Show into Exposition’s corporate checking account, in violation of the contract;
3) The $500 expense payment, required under the contract, was not paid by Exposition.
4) Exposition did not forward one or more of the exhibitor contracts to Double C. as required under the contract.
5) Exposition obtained only $300,000 of liability insurance coverage for the Show, rather than the $500,000 as required by the contract.
Exposition at trial and on appeal fails to assert a cognizable legal defense to the admitted contract breaches. Rather, Exposition seeks to explain why the breaches occurred, and attempts to justify the breaches as minor deviations necessary to fulfill the main objective of the contract, that being the operation and administration of the Show itself. In so doing, Exposition points out that foreclosure and commencement of the suit occurred during the January 1981 Show, when it was unable to adequately respond to the foreclosure letter.
In substance, Exposition’s argument can be summarized thusly: Double C. did not complain of the contract breaches before foreclosure, breaches which Exposition says were excusable and immaterial; therefore, Exposition says, given the fact that Exposition put on the Show, which was the main purpose of the agreement, Exposition produced sufficient evidence to create a jury question on the issue of materiality of breach.
The evidence shows Double C. had no duty to complain of contract breaches prior to foreclosure. Furthermore, the contract default provisions stated time was of the essence, and that “acceptance of partial or delinquent payments or the failure of [Double C.] to exercise any right or remedy shall not be a waiver of any obligation of [Exposition] or right of [Double C.]
No useful purpose can be served in detailing Exposition’s excuses for the admitted breaches. Suffice it to say that reasons for the breaches that fall short of legal defenses do not affect the issue whether the contract was materially breached. The fact remains that Exposition admitted, pursuant to Rule 36, ARCP, numerous contractual breaches. Evidence of other less significant breaches was produced at trial. In Evans v. Insurance Co. of North America, 349 So.2d 1099 (Ala.1977), this Court stated that an “admission made in response to the request ‘is conclusively established’ unless (1) there is a motion for amendment or withdrawal of the admission, and (2) the trial court grants that motion.” 349 So.2d at 1102. Exposition did not object to these admissions, and it is bound thereby as a judicial stipulation.
The trial court, in its final order, concluded:
“There was no scintilla of evidence presented contrary to these undisputed facts and that these breaches were defaults of the contract between the parties. .. . The verdict of the jury was contrary to the undisputed evidence at trial....”
After reviewing all the evidence appearing of record, we cannot say the trial judge erred in granting Double C.’s JNOY motion. Although we cannot and do not speculate as to whether evidence of any admitted breach or other breaches supported by evidence at trial, standing alone, would foreclose from jury consideration the question of materiality, the totality of the evidence relating to materiality of breach is of such magnitude that no evidence exists from which reasonable jurors could find immaterial contract *55 breach. Stated otherwise, the evidence of contract breach, when construed in light of the clearly expressed intentions of the contracting parties relating to default, went to the essence of the contract, and thereby eliminated any factual question relating to materiality of breach. Accordingly, we affirm the trial court’s judgment.
AFFIRMED.
All the Justices concur except FAULKNER, J., not sitting.